UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Adriano Mabeza,<br><br>         Plaintiff,<br><br>v.<br><br>Ashfield Management Services, Inc. and Lenny Credit, Inc.<br><br>         Defendants. | Case No.: 17-cv-1946-AJB-KSC<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT, ATTORNEY'S FEES**<br><br>**(Docs. Nos. 8, 9)** |

Before the Court is plaintiff Adriano Mabeza's motion for default judgment against Ashfield Management Services, Inc. (Doc. No. 8.) Mabeza also filed a motion for attorney's fees and costs. (Doc. No. 9.) Having reviewed the parties' arguments in light of controlling authority, and pursuant to Local Civil Rule 7.1.d.1, the Court finds the matter suitable for disposition without oral argument. Accordingly, the March 22, 2018 hearing is **VACATED**. For the reasons set forth herein, Mabeza's motions for default judgment and attorney's fees are **GRANTED**. (Doc. Nos. 8, 9.)

### I.  BACKGROUND

After filing for bankruptcy, Mabeza notified defendants he had retained an attorney and requested Ashfield and Lenny Credit cease contacting him. (Doc. No. 1 ¶ 1–4.) Nevertheless, Mabeza alleges, defendants contacted him five additional times, violating

the Telephone Consumer Protection Act, the Fair Debt Collection Practices Act, and the Rosenthal Fair Debt Collection Practices Act. (*Id.* ¶ 4–5, 40.) During each call, Mabeza informed defendants he had retained an attorney and that any communications should be directed towards them. (*Id.* ¶ 43.)

The Court Clerk filed an entry of default on January 2, 2018, after the defendants were served, but never answered. (Doc. No. 6.) Subsequently, Mabeza settled with defendant Lenny Credit, Inc. and it was dismissed from the case. (Doc. Nos. 11, 13.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. It is within the sound discretion of the district court to grant or deny an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the Court considers the following factors, commonly referred to as the *Eitel* factors: (1) "the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citation omitted).

Generally, once the court clerk enters default, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). However, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992), *superseded by statute on other grounds*, Pub. L. No. 100-702, 102 Stat. 4669.

### III. DISCUSSION

Mabeza's claims include the TCPA, FDCPA, and the Rosenthal Act. Mabeza's motion discusses each of the *Eitel* factors.

#### 1. Possibility of Prejudice to the Plaintiff

There is a possibility of prejudice to a plaintiff when denying default judgment would leave them without an alternate recourse for recovery. *See PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Mabeza argues he would be significantly prejudiced if he was not allowed the right to judicial resolution of his claims. (Doc. No. 8 at 8.) The Court agrees with his reasoning that "[w]ithout a judgement [sic], Plaintiff will be without recourse to resolve his claims and would receive no compensation for the unlawful conduct he has been subject to." (*Id.*) Thus, this factor weighs in favor of granting Mabeza a default judgment.

#### 2. Substantive Merits and Sufficiency of Claim

Under the second and third *Eitel* factors, the Court must examine whether the plaintiff has pled facts sufficient to establish and succeed on its claims. *See Eitel*, 782 F.2d at 1471. These factors require the complaint "state a claim on which the plaintiff may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. Mabeza argues he had sufficiently pled facts necessary to meet the TCPA, FDCPA, and Rosenthal Act elements.

##### a. TCPA

Under the TCPA, Mabeza must establish that (1) the phone calls were made using an automatic telephone dialing system ("ATDS"); (2) he was the "called party;" and (3) that Ashfield did not have Mabeza's prior consent to make the calls. 47 U.S.C. § 227(b)(1)(A)(iii); *Meyer v. Portfolio Recovery Associates, LLC*, 77 F.3d 1036, 1043 (9th Cir. 2012).

Under the first element, Mabeza sufficiently alleged Ashfield's calls to him were made using an ATDS. (Doc. No. 1 ¶¶ 48–51.) Although these are general allegations, Mabeza is correct that his complaint "supports a reasonable inference that the phone calls were sent using an ATDS." (Doc. No. 8 at 9 (*see Robbins v. Coca-Cola-Co.*, No. 13-cv-

132-IEG NLS, 2013 WL 2252646, at *2 n. 3 (S.D. Cal. May 22, 2013) (finding that general allegations in a TCPA case are sufficient in the pre-discovery phase)).) Regarding the second element, Mabeza alleges he is the "called party" because the phone number Ashfield dialed "was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1)." (Doc. No. 1 ¶ 50.) As for the last requirement, Mabeza alleges he never gave Ashfield consent, but that in any event, that consent was expressly revoked during at least two phone calls. (*Id.* ¶ 37, 39, 42–43, 52–54.) Thus, the Court finds Mabeza pled sufficient facts to succeed on his TCPA claim.

### b. FDCPA and Rosenthal Act

Under the FDCPA, a plaintiff must prove "(1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o." *Wheeler v. Premiere Credit of North America, LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015). The Rosenthal Act has the same elements, except plaintiff must show he is a "debtor." *Mannello v. Residential Credit Sols., Inc.*, No. 2:15-cv-07674-CAS-AJW, 2016 WL 94236, at *4 (C.D. Cal. Jan. 7, 2016).

Mabeza argues he has adequately alleged he is both a debtor and a consumer, meeting the first elements under both statutes. His complaint states he is a debtor and a consumer, as defined by Cal. Civ. Code § 1788.2(h) and 15 U.S.C. § 192a(3). (Doc. No. 1 ¶ 18.) Next, Mabeza alleges "[t]he debt was incurred primarily for personal, family or household purposes and is therefore a 'consumer debt' . . . ." (*Id.* ¶ 34.) As to the third element, Mabeza alleges Ashfield is a debt collector as defined by the statute. (*Id.* ¶ 22.) Last, the complaint sufficiently alleges Ashfield violated § 1692(c)(a)2, which forbids contact with consumers who are known to be represented by an attorney; § 1692c(c), by contacting Mabeza after such consent was revoked; § 1692d, for "engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt;" and § 1692f, which makes it unlawful to use

unfair or unconscionable means to collect a debt. (*Id.* ¶ 46.) Thus, the Court finds Mabeza has also sufficiently pled facts to succeed on both his FDCPA and Rosenthal Act claims.

### 3. Sum of Money at Stake

Here, Mabeza seeks a total judgment amount of $13,450. This includes TCPA statutory damages for $7,500, FDCPA statutory damages of $1,000, and attorney's fees and costs of $4,950.

"[T]he court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions. *See Totten v. Hurrell*, No. 00–2718, 2001 U.S. Dist. LEXIS 20259, at *2 (N.D. Cal. Nov. 28, 2001) (stating that "the 'sum of money at stake' factor [under *Eitel*] is meant to focus on the size of the award requested, as courts are hesitant to enter default judgments where large sums of money are at stake," and finding an award of $19,977.74 not a "large money judgment" in today's world). The Court considers Mabeza's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) (finding plaintiff's calculations of damages and attorney fees reasonable, based on plaintiff's sworn declarations and pay stubs and other documentation submitted by plaintiffs).

First, Mabeza requests $7,500 for Ashfield's TCPA violations. The TCPA allows $500 for each violation. 47 U.S.C. § 227(b)(3)(B). Mabeza alleges Ashfield placed five calls to his "phone using an ATDS" after he "expressly revoked consent to be contacted." (Doc. No. 8 at 11.) However, Mabeza argues the Court should treble his damage award because Ashfield acted "willfully or knowingly" when it contacted him in violation of the statute, in which case $1,500 per violation can be awarded. (Doc. No. 8 at 11; 47 U.S.C. § 227(b)(3).) Taking Mabeza's allegations as true, the Court finds Ashfield had sufficient knowledge of Mabeza's revoked consent as of the September 15, 2016 telephone call, in which Mabeza revoked consent over the phone and served a bankruptcy notice through an

attorney. (Doc. No. 8 at 5, 11.) Ashfield then made five more phone calls throughout 2017, a willing violation of the TCPA. Thus, the Court grants Mabeza's request for $7,500 in treble statutory damages.

Next, Mabeza seeks $1,000 in statutory damages under the FDCPA. (Doc. No. 8 at 12.) A court may award up to $1,000 for FDCPA violations. 15 U.S.C. § 1692k(a). Under the statute, the Court is to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. . . ." *Id.* at (b)(1). Courts have awarded $250 for a *de minimus* one time violation, $350 for three voicemail violations, and the maximum penalty for 20 calls after plaintiff revoked consent. *See*, respectively, *Davis v. Hollins Law*, 25 F. Supp. 3d 1292, 1296 (E.D. Cal. 2014); *Freligh v. Roc Asset Solutions, LLC*, Case No. 16-cv-00653-MEJ, 2016 WL 3748723, at *8 (N.D. Cal. June 8, 2016); *Mulvihill v. St. Amant & Assocs.*, No. 2:13–cv–0080 TLN DAD, 2014 WL 1665229, at *2 (E.D. Cal. Apr. 24, 2014).

Here, Ashfield's actions are not so egregious as to warrant the maximum penalty. Even five calls—including threats of wage garnishment and legal action—did not warrant a maximum penalty in one case. *Evans v. Creditor's Specialty Service, Inc.*, Case No. 15-cv-03355-BLF, 2016 WL 730227, at * 3 (N.D. Cal. Feb. 24, 2016) (granting an award of $700 under the FDCPA). Although Mabeza revoked consent orally, in writing, and through an attorney, Ashfield only made five additional phone calls and there was no inherent threatening or misleading nature about the calls justifying the maximum penalty. *See Ortega v. Girggs & Associates LLC*, No. 5:11-cv-02235-EJD, 2012 WL 2913202, at *1 (N.D. Cal. Jul. 13, 2012) (finding maximum statutory damages were owed when defendant made two calls, threatened criminal prosecution, and called plaintiff's work pretending to be from the district attorney's office). Thus, the Court finds $600 is a reasonable penalty under the FDCPA for knowingly violating the statute after Mabeza revoked consent and hired an attorney.

Last, Mabeza requests $4,950 in attorney's fees and costs. (Doc. No. 9 at 2.) The FDCPA allows recovery of attorney's fees. 15 U.S.C. § 1692k(a)(3). Counsel spent twelve hours litigating this case. (Doc. No. 9 at 4.) The lead attorney's rate is $400, and his associate's rate is $300. The Court finds these rates and hours reasonable for the work done, and well supported by declarations and a detailed timesheet. (Doc. Nos. 9-2, 9-3, 9-5.) Thus, the Court awards $4,950 in attorney's fees.

Together, the TCPA statutory penalties, FDCPA penalties, and attoney's fees total $13,050.

### 4. Possibility of Dispute Concerning Material Facts

The next pertinent *Eitel* factor considers whether there are disputed material facts. "Upon entry of default, all well pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 117. Here, Mabeza has alleged sufficient facts to support its claims as analyzed above. Moreover, because Ashfield failed to participate in litigation, the clerk entered default against it, submitting all well pleaded facts as true. Thus, there is no dispute of material facts and this factor favors the entry of default judgment against Ashfield.

### 5. Excusable Neglect

There is no indication that defendants allowed its default to be taken as a result of excusable neglect. After being served with the complaint, Ashfield simply failed to respond or even participate in defending itself. The Court simply has nothing to support a finding that Ashfield's neglect was excusable. Consequently, this factor weighs in favor of the entry of default judgment.

### 6. Policy Favoring Decisions on the Merits

Although default judgment is disfavored, a decision on the merits is impractical, if not impossible, when the defendant takes no part in the action. *Penpower Technology Ltd. v. S.P.C. Technology*, 627 F. Supp. 2d 1083, 1093 (N.D. Cal. 2008). Given that Ashfield has failed to respond, the general preference for resolution on the merits is not equally

applicable. *See, e.g.*, *id*. In sum, the relevant considerations weigh in favor of entry of default judgment against Ashfield.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Motion for Default Judgment and Attorney Fees against Ashfield, (Doc. Nos. 8, 9), are **GRANTED**. The Court awards $13,050. The Clerk is directed to enter judgment consistent with this order.

**IT IS SO ORDERED**.

Dated: March 20, 2018

Hon. Anthony J. Battaglia
United States District Judge